UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| SHAWN M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-254-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Shawn M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 5, 6. Plaintiff also filed a reply brief. *See* ECF No. 7. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 5) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 6) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for DIB on October 16, 2018, alleging disability beginning September 1, 2017 (the disability onset date), due to a number of physical and mental ailments, including lymphoma, herniated disc, carpal tunnel syndrome, anxiety, depression, and attention deficit hyperactivity disorder ("ADHD"). Transcript ("Tr.") 15, 224-25, 238. Plaintiff's claim was denied initially on February 28, 2019, and again on reconsideration on June 10, 2019,

after which he requested an administrative hearing. Tr. 15. On April 30, 2020, Administrative Law Judge Barbara Dunn ("the ALJ") presided over a telephonic hearing[1] from New York, New York. *Id*. Plaintiff appeared and testified in Buffalo, New York, and was represented by Kathryn Eastman, an attorney. Tr. 15, 32-79. Margaret E. Heck, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on June 10, 2020, finding that Plaintiff was not disabled. Tr. 12-31. On December 14, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's June 10, 2020, decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 33.

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her June 10, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since September 1, 2017, the alleged onset date (20 CFR 404.1571 *et s*eq.).

3. The claimant has the following severe impairments: status-post lymphoma; degenerative disc disease of the cervical spine; obesity; carpal tunnel syndrome; major depressive disorder; generalized anxiety disorder; attention deficit hyperactivity disorder ("ADHD"); and plantar fasciitis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b),[2] because with some exceptions: he can lift, carry, push, pull 20 occasionally and 10 pounds frequently; stand and or walk six hours and sit six hours in an eight hour workday; he cannot climb ladders, ropes or scaffolds, or be exposed to hazards such as dangerous machinery and unprotected heights; he is limited to frequent handling and fingering; he can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. In addition, the claimant is limited to unskilled, simple, repetitive work with no fast-paced production requirements; and he is limited to occasional interaction with the public and co-workers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7. The claimant was born on August 28, 1978 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

Tr. 15-26.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits filed on October 16, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 26.

## ANALYSIS

Plaintiff asserts two points of error, both of which find fault in the ALJ's analysis of the opinion evidence. Plaintiff first argues that the ALJ failed to incorporate the mental limitations opined by state agency reviewing psychologist J. Dambrocia, Ph.D. ("Dr. Dambrocia") (Tr. 93-94), despite purporting to find that opinion very persuasive, and impermissibly used her own lay judgment by picking and choosing among the limitations assessed by consultative psychiatric examiner Janine Ippolito, Psy.D. ("Dr. Ippolito") (Tr. 412-15). *See* ECF No. 5-1 at 1, 7-11. Next, Plaintiff argues that the ALJ erroneously failed to clarify the opinion of consultative internal medicine examiner Nikita Dave, M.D. ("Dr. Dave") (Tr. 377-80), after conceding the opinion was vague and rejecting it for that reason. *See id*. at 1, 11-13

The Commissioner argues in response that the RFC's mental limitations were consistent with the work-related limitations assessed by Dr. Dambrocia, which the Commissioner notes were confirmed by state agency reviewing psychologist S. Juriga, Ph.D. ("Dr. Juriga") (Tr. 106-07, 112-14), as well as with the findings of Dr. Ippolito. *See* ECF No. 6-1 at 5-8. The Commissioner also argues that the ALJ's finding that Dr. Dave's opinion was "somewhat persuasive" was supported by substantial evidence, and Dr. Dave's assessment of "mild limitations" for lifting and carrying and for prolonged standing" is consistent with the ALJ's RFC finding for a limited range of light work. *See id*. at 8-11.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ sufficiently supported the RFC finding with substantial evidence, including the medical opinion evidence. Relying on multiple medical opinions and the record as a whole, the ALJ reasonably determined the work-related limitations caused by Plaintiff's impairments, and the RFC was not required to mirror any particular medical opinion, as Plaintiff argues. Accordingly, the Court finds no error.

On February 28, 2018, Plaintiff was seen by Christina Dudziak, NP ("Ms. Dudziak"), for anxiety follow-up. Tr. 357. Plaintiff complained of occasional racing thoughts but denied panic attacks and difficulty sleeping. *Id*. Plaintiff stated that his symptoms remained well controlled on

his current treatment regimen, and he had no acute complaints. *Id*. He had been prescribed Adderall for ADHD and paroxetine for anxiety. *Id*.

On May 2, 2017, Plaintiff was seen by Jessica Vail, NP ("Ms. Vail"), at Roswell Park Cancer Institute ("Roswell"), for "lymphoma/myeloma follow-up."  Tr. 321-23. Plaintiff had been diagnosed with non-Hodgkins lymphoma stage IV in February 2000 and was noted to be in "complete remission." Tr. 321. Plaintiff reported that he was feeling generally well and denied any chest pain or respiratory distress. *Id*. Ms. Vail noted that Plaintiff had clear lungs and no evidence of any adenopathy in the neck. *Id*.

On May 8, 2018, Plaintiff was seen by Alice Mohr, NP ("Ms. Mohr"), at Roswell. Tr. 324-25. Plaintiff reported no complaints but reported feeling depressed due to fear of lymphoma relapse. Tr. 324. Plaintiff stated that he was a "stay home dad" and had "started his own business doing pressure washing." *Id*. Ms. Mohr noted that Plaintiff ambulated with a normal gait; he retained clear lungs; and had no additional concerns. Tr. 325.

On May 30, Plaintiff had another follow-up visit with Ms. Dudziak for anxiety. Tr. 351-52. Plaintiff reported that his ADHD symptoms were relatively well controlled on the prescribed Adderall, but he reported that the medication was not as effective as it used to be. Tr. 351. He also reported that his anxiety symptoms remained well controlled on the prescribed paroxetine. *Id*. Ms. Dudziak stated that Plaintiff could try alternative ADHD medications or seek further advice from a psychiatrist, but Plaintiff opted to continue with his current regimen. Tr. 352.

On August 30, 2018, Plaintiff presented to Ms. Dudziak for a comprehensive physical evaluation. Tr. 345-46. He had no acute complaints and reported he was generally in good health overall. Upon examination, Plaintiff was alert and oriented and demonstrated no muscle edema in

the musculoskeletal system. Tr. 346. Ms. Dudziak noted full range of motion, 5/5 strength, and a normal gait. *Id*. Ms. Dudziak also noted no respiratory or cardiovascular defects. Tr. 345-46.

On November 30, 2018, treating chiropractor Nicholas Fuhrmann, D.C. ("Dr. Fuhrmann"), noted that he was treating Plaintiff for cervical, thoracic, and lumbar disk disorders. Tr. 368. Dr. Fuhrmann opined that Plaintiff's prognosis was "guarded," but he had responded well to conservative care. *Id*.

On February 15, 2019, Dr. Dave performed a consulting internal medicine examination. Tr. 377-80. On physical examination, Plaintiff's gait was "extremely slowly [*sic*] but completely normal;" his lumbar spine range of motion was limited; and there was some mild tenderness noted at L1 and L4-S1 and bilateral L4-S1 paraspinals, and in the bilateral trapezii. Tr. 378-79. Dr. Dave noted that Plaintiff completed a full squat, had normal stance; required no assistance getting on and off the examining table; and had 5/5 strength, as well as full range of motion in the cervical spine, shoulders, elbows, ankles, hips, and knees. *Id*. An x-ray of Plaintiff's cervical and lumbar spine showed "mild" degenerative changes in the cervical spine and no bony abnormality in the lumbar spine. Tr. 379. Dr. Dave opined that Plaintiff had mild limitations for lifting and carrying heavy objects due to the cervical spine; he should avoid sharp instruments and machinery due to intermittent numbness of the fingertips; and assessed mild limitations for prolonged standing due to left foot plantar fasciitis. Tr. 380.

Also on February 15, 2019, Dr. Ippolito performed a consulting adult psychiatric evaluation. Tr. 412-15. On mental status exam, Plaintiff had anxious affect and mood; impaired attention, concentration, and recent and remote memory; and fair to good insight and judgment. Tr. 413-14. Dr. Ippolito opined that Plaintiff had mild limitations interacting adequately with supervisors, coworkers and the public and sustaining an ordinary routine and regular attendance at

work; moderate limitations sustaining concentration and performing a task at a consistent pace; and marked limitations regulating emotions, controlling behavior, and maintaining well-being. Tr. 414.

On February 20, 2019, state agency review psychologist Dr. Dambrocia opined that Plaintiff had moderate limitations in interacting with others and concentrating, persisting, and maintaining pace; and mild limitations in adapting and managing himself. Tr. 85-86. Dr. Dambrocia opined that Plaintiff was moderately limited in understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being unduly distracted; completing a normal workday or week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. Tr. 93-94. On May 6, 2019, state agency review physician Dr. Juriga agreed with Dr. Dambrocia's findings. Tr. 106-07, 112-14.

On February 26, 2019, state agency reviewing physician Gary Ehlert, M.D. ("Dr. Ehlert"), stated that Plaintiff could lift and carry up to 20 pounds; perform occasional postural activities, including climbing and balancing; and that should avoid even moderate exposure to hazards such as heights and machinery. Tr. 89-90. He opined that Plaintiff could perform light work with occasional postural limitations. On June 10, 2019, state agency reviewing physician D. Miller, D.O. ("Dr. Miller"), agreed with Dr. Ehlert's findings. Tr. 108-12.

On February 28, 2019, Plaintiff reported to Ms. Dudziak that his Adderall helped "on some level" but "it [was] not as effective as it used to be." Tr. 383. He reported sleeping poorly at night

partially due to chronic neck and back pain. *Id*. His PHQ-9 score was 14, indicating moderate depression. *Id*.

On May 8, 2019, Plaintiff had his annual lymphoma follow-up visit at Roswell with Francisco Hernandez, M.D. ("Dr. Hernandez"). Tr. 420-23. Dr. Hernandez stated that Plaintiff's lymphoma was in "complete remission." Tr. 420. Plaintiff reported that he was feeling well and had no new complaints. *Id*. Plaintiff also reported that he continued to be a stay-home dad; he was "coping with stressors better;" and he stays active, playing hockey "frequently." *Id*. Plaintiff denied feeling depressed or anxious, and Dr. Hernandez reported that Plaintiff had intact memory and appropriate affect. Tr. 421-22.

On September 3, 2019, Ms. Dudziak indicated that Plaintiff was in "good" health overall, and physical evaluation revealed no joint stiffness, shortness of breath, or fatigue. Tr. 433-35. Ms. Dudziak characterized Plaintiff's major depressive disorder as "moderate" and noted that mental status examination revealed no anxiety or depressive symptoms. Tr. 433. Ms. Dudziak further noted that Plaintiff had full range of motion in his back with no evidence of any muscle tenderness or edema. Tr. 435.

On January 27, 2020, Plaintiff saw Peter Leising, LCSW-R ("Mr. Leising"), at Suburban Psychiatric Associates, for mental health treatment. Tr. 448-49. Plaintiff told Mr. Leising that he was unhappy, sad, and felt like a failure. Tr. 448. Plaintiff also reported moderate anxiety, increasing depressed feelings, fluctuating concentration, and difficulty sleeping. *Id*. On mental status examination, Plaintiff was well groomed, calm, cooperative, and he had normal attention, concentration, and intact insight and judgment. *Id*. He displayed euthymic mood and sadness during the encounter. Tr. 448-49. Overall, Mr. Leising characterized Plaintiff's generalized anxiety behavior as "mild." Tr. 449.

As of May 2020, Plaintiff remained under the care of Dr. Fuhrmann for chiropractic treatment. Tr. 469. Dr. Fuhrmann noted that Plaintiff's condition was chronic, and he had abnormal flexion and rotation, and range of motion in the back. *Id*. Dr. Fuhrmann further noted that Plaintiff required "maintenance care" on an "as needed" basis. *Id*.

As noted above, Plaintiff argues that the ALJ did not properly consider the opinion evidence, and therefore, the RFC finding was not supported by substantial evidence. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d

at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new

regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on October 16, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a

medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or more than the Commissioner's authority. *Brown v. Yuckert*, 482 U.S at 145 (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ considered the record as a whole and reasonably determined that the work-related limitations caused by Plaintiff's impairments were consistent with the ability to perform light work. Tr. 20-24.  *See* 20 C.F.R. §§ 404.1527, 416.927.

First, the RFC appropriately reflected the mental work-related limitations in the assessments from Drs. Dambrocia, Juriga, and Ippolito. As Plaintiff notes, the ALJ stated that she found Dr. Dambrocia's February 2019 reviewing opinion "very persuasive," because "the totality of the evidence relating to the claimant's mental limitations comports with the assessed limitations." *See* ECF No. 5-1 at 7 (citing Tr. 23). However, Plaintiff complains that the ALJ considered Dr. Dambrocia's assessment of moderate limitations in social functioning, activities of daily living, and concentration, persistence, or pace, but she failed to consider other moderate limitations opined in the PRT (psychiatric review technique) form. *See id*. Plaintiff's arguments are unfounded.

After reviewing Plaintiff's file on February 26, 2019, Dr. Dambrocia completed a Mental Residual Functional Capacity Assessment form, in which Dr. Dambrocia was directed to explain certain assessed limitations in narrative form. Tr. 92-94. In each case, Dr. Dambrocia replied: "Please see PRT." *See id*. In the PRT, Dr. Dambrocia explained that "[o]verall, based on psychiatric/cognitive limitations, the claimant is viewed as able to understand and remember instructions and sustain attention and concentration for tasks." Tr. 87. Dr. Dambrocia further assessed that "[g]iven reports and history:" the presence and degree of specific understanding and memory capacities and/ or limitations:

> [T]he claimant may have difficulties relating with others and/or adapting to changes; the claimant's ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact. *Similarly, his ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting.*

Tr. 87 (emphasis added). As the ALJ noted, Dr. Dambrocia's assessment was confirmed by Dr. Juriga's May 6, 2019 assessment. Tr. 23, 106-07, 112-14. Thus, Plaintiff's arguments are facially unsupported by the forms completed by Drs. Dambrocia and Juriga, which indicate that Plaintiff had the ability "to handle ordinary levels of supervision in the customary work setting." Tr. 87-88, 92-94, 106-07, 112-14.

Furthermore, the fact that the ALJ did not specifically mention every work-related limitation stated in the PRT does not mean she did not consider them. *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d at 448 ("[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted.") (internal quotations and citation omitted). Moreover, the RFC's limitation to unskilled, simple, repetitive work with no fast-paced production requirements and occasional interaction with the public and co-workers was consistent with the assessments from Drs. Dambrocia and Juriga, including the detailed explanations in the PRT.  Tr. 20.  Thus, remand of this case for the ALJ to specifically discuss the detailed explanations in the PRT would serve no purpose. *Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (remand is not necessary when there is no reasonable likelihood that reconsideration of the same evidence would change the ALJ's decision).

Plaintiff also complains that the ALJ rejected Dr. Ippolito's finding of marked limitations in regulating emotions, controlling behavior, and maintaining well-being, as well as Dr. Dambrocia's finding of mild limitations in the domain of adapting and managing himself, and therefore used her own lay opinion to find moderate limitations in this domain. However, Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding

based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d).

Moreover, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental). The ALJ here thoroughly considered the totality of the evidence relating to Plaintiff's mental limitations and reasonably assessed limitations that are consistent with "most characterizations of [Plaintiff's] symptoms as 'mild' or 'moderate.'" Tr. 23.

As noted above, the ALJ found the opinions of Drs. Dambrocia and Juriga "very persuasive" because they were "generally in line and supported by" the mental status examinations in the record. On the other hand, however, the ALJ found Dr. Ippolito's opinion of marked limitations in regulating emotions, controlling behavior, and maintaining well-being not supported by the record. Tr. 24. As the ALJ noted, Plaintiff consistently had appropriate mood and affect, and his major depressive disorder and generalized anxiety behavior was only characterized moderate or mild. Tr. 24, In addition, noted the ALJ, there was little evidence that Plaintiff was uncooperative, hostile, emotionally unstable, or that he was unable to maintain his well-being or control emotions in his daily activities, which included childcare. *Id*. Accordingly, the ALJ

reasonably found Dr. Ippolito's opinion "partially persuasive" overall but not persuasive relating to her assessment of marked limitations in the noted areas. Tr. 23, 24. Based on the foregoing, the ALJ reasonably concluded that the overall record did not support greater work-related mental limitations than those contained in the RFC finding. Accordingly, the Court finds no error.

Plaintiff next argues that the physical RFC was unsupported, suggesting that Dr. Dave's assessment of only mild physical limitations was somehow inconsistent with the RFC. *See* ECF No. 5-1 at 11-13. Plaintiff's argument fails for several reasons. First, the ALJ found Dr. Dave's assessment "somewhat persuasive," explaining that it was "generally consistent with [Plaintiff's] diagnosis and physical evaluations show[ing] full strength and range of motion. However, the ALJ noted that Dr. Dave did not define 'mild' or quantify [Plaintiff's] limitations in terms of weight and duration." Tr. 23-24, 380. *See* 20 C.F.R. § 404.1520c. The ALJ also considered the February 2019 assessment from Dr. Ehlert (Tr. 82, 88, 89-92), as well as Dr. Miller's June 2019 assessment upon reconsideration (Tr. 108-12), both of which specifically considered Dr. Dave's assessment of only mild limitations and further supported the RFC for a limited range of light work. Tr. 23.

Second, opinions of no more than moderate physical limitations are not inconsistent with light work, as the ALJ found here. *See, e.g., Babcock v. Berryhill*, 2018 WL 4347795, at *12 n.13 (W.D.N.Y. Sept. 12, 2018) (noting moderate to marked restriction in lifting was consistent with light work); *Gerry v. Berryhill*, No. 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (mild-to-moderate limitations constitute substantial evidence in support of RFC for light work); *Marie W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1053 (WBC), 2021 WL 431656, at *4 (W.D.N.Y. Feb. 8, 2021) ("[m]oderate limitations in reaching and other postural limitations . . . are generally considered consistent with the demands of light work"); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756, at *13-15 (W.D.N.Y. Feb. 25, 2015) (moderate limitations in

sitting, standing and walking not inconsistent with sitting, standing, and walking six hours a day) (collecting cases).

Third, as mentioned previously, the RFC need not mirror a particular medical opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record). Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record. *See Tricarico*, 681 F. App'x at 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence, and here substantial evidence supported the ALJ's determination. *Veino*, 312 F.3d at 588; *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record").

Finally, well-supported opinions from non-examining state agency doctors, such as Drs. Ehlert and Miller, may provide substantial evidence supporting the RFC finding. *See, e.g.*, *Diaz v. Shalala*, 59 F.3d at 313 n.5. (2d Cir. 1995) (State agency consultants are recognized experts whose medical opinions can constitute substantial evidence); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision, and can even override a treating source opinion); *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016), (the ALJ correctly gave great weight to the opinion of a medical expert; even though he lacked a treating relationship because his opinion was consistent with the objective medical evidence in the record.). Thus, the ALJ reasonably concluded that the medical evidence shows that Plaintiff is limited to light work as opined by Drs. Ehlert and Miller RFC. Tr. 23.

Plaintiff's arguments amount to nothing more than an invitation for this Court to reweigh the evidence in a manner more favorable to him—arguments that are insufficient under the substantial evidence standard of review. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (stating that under the substantial evidence standard of review, it is not enough for claimant to offer a different interpretation of the evidence, he must demonstrate that no reasonable factfinder could have weighed the evidence as the ALJ did in his decision). Plaintiff's argument, therefore, fails.

As detailed above, substantial evidence in the record supports the ALJ's conclusion that Plaintiff was not disabled during the period at issue. When "there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 5) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 6) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE